Filed 12/30/16

**CERTIFIED FOR PUBLICATION**

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CAL FIRE LOCAL 2881 et al.,<br><br>    Petitioners and Appellants,<br><br>v.<br><br>CALIFORNIA PUBLIC EMPLOYEES'<br>RETIREMENT SYSTEM et al.,<br><br>    Defendants and Respondents,<br><br>THE STATE OF CALIFORNIA,<br><br>    Intervenor and Respondent. | A142793<br><br>(Alameda County<br>  Super. Ct. No. RG12661622) |

This is an appeal from the trial court's denial of a petition for writ of mandate and injunctive relief filed by plaintiff Cal Fire Local 2881 on behalf of itself and its members. Plaintiffs, professional firefighters employed by the State of California and the union representing them, sought this relief against defendant California Public Employees' Retirement System (CalPERS) to compel it to continue to enforce Government Code section 20909, a state law enacted by the Legislature in December of 2003 to provide eligible public employees the option to purchase at cost up to five years of nonqualifying service credit (sometimes referred to as "airtime").[1]

This airtime service credit, when purchased, provided an increase in the pension benefits paid to state employees during their retirement, as it enabled the purchasers to increase the amount of service credit factored into their pensions. However, in 2012, the Legislature eliminated this option as of January 1, 2013 upon enacting the Public

---

[1]     Unless otherwise stated herein, all statutory citations are to the Government Code.

Employees' Pension Reform Act of 2013 (PEPRA), a comprehensive reform measure designed to, among other things, strengthen the state's public pension system and ensure its ongoing solvency. (See § 7522.46, § 20909, subd. (g).)

According to plaintiffs, the Legislature's elimination of the option provided under section 20909 to purchase airtime service credit is a violation of the contracts clause of the California Constitution (Cal. Const., art. I, § 9) and, as such, CalPERS lacks authority to refuse to consider applications for this service credit. For reasons set forth below, we reject plaintiffs' position and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts as found by the trial court are not in dispute. CalPERS is the sole administrative agency responsible for administering the California Public Employees' Retirement System for the State of California. (Cal. Const., art. XVI, § 17, subds. (b), (h); see also §§ 20001, 20002, 20004.) Plaintiffs, as state employees, are enrolled in CalPERS and eligible for certain retirement benefits, including pension benefits. (§ 20400; *Miller v. State of California* (1977) 18 Cal.3d 808, 814 ["Pension rights . . . are deferred compensation earned immediately upon the performance of services for a public employer"] [*Miller*].) These retirement benefits are defined exclusively by statute and are not subject to expansion or abridgement by CalPERS. (*Miller, supra,* 18 Cal.3d at p. 814; see also *City of San Diego v. Hass* (2012) 207 Cal.App.4th 472, 495 ["only the [legislative body] has the power to grant employee benefits, and [the local agency charged with administering the City's retirement system] exceeds its authority when it attempts to "expand pension benefits beyond those the [legislative body] has *granted"*].)

Of significance here, one such benefit, available to active CalPERS members as of January 1, 2003, was the option afforded under section 20909 to purchase up to five years of nonqualifying service credit (aka, airtime). To qualify for this option, the employee was required to have attained at least five years of state service, to be presently employed by the state, and to contribute "an amount equal to the increase in employer liability, using the payrate and other factors affecting liability on the date of the request for costing of the service credit." (§ 20909, subds. (a), (b); § 21052.) Thus, this airtime service

credit was unique in that it did not reflect the member's actual service in qualifying employment. Rather, the credit could be added to the member's total amount of service credit when calculating the member's retirement allowance, but did not affect the vesting of medical coverage or membership. Further, the cost of the airtime, which was to be borne entirely by the purchasing member and not by the state, was calculated as a present value of the projected increase in liability to the CalPERS system. (See § 21052; AB 719 Assembly Bill-Bill Analysis, p. 2 (Aug. 18, 2003) ["this benefit is intended to be cost neutral to employers. The member pays the full present value cost of the additional service credit . . . [which] is calculated to be equivalent to the cost of the increased benefit due to the additional service credit"]; AB 719, Assembly Bill-Bill Analysis, Senate Rules Committee, p. 2 ["the cost of the 'air time' service credit will be fully paid by the member, with no employer contribution permitted"].)

This option to purchase airtime service credit was available to CalPERS members from January 1, 2003 through the end of 2012. However, as mentioned above, in September of 2012, the Legislature enacted PEPRA, a reform measure intended to strengthen the state's public pension system and ensure its ongoing solvency. (Stats 2012 ch 296 § 15 (AB 340), effective January 1, 2013.) One PEPRA provision, section 7522.46, subdivision (b), mandated expiration of the option on January 1, 2013, thereby providing eligible members one last 15-week window of opportunity (from October 4, 2012 until December 31, 2012) to purchase airtime service credit. Afterward, however, on January 1, 2013, the option would cease to exist. (§ 7522.46 ["(a) A public retirement system shall not allow the purchase of nonqualified service credit . . . . [¶] (b) Subdivision (a) shall not apply to an official application to purchase nonqualified service credit that is received by the public retirement system prior to January 1, 2013, that is subsequently approved by the system."]; see also § 20909, subd. (g) ["This section shall apply only to an application to purchase additional retirement credit that was received by the system prior to January 1, 2013, that is subsequently approved by the system"].)

Plaintiffs, representing a putative class of CalPERS members who were eligible to, but did not, purchase airtime service credit during this statutory time period that expired on January 1, 2013, initially filed this lawsuit on December 28, 2012.[2] The operative pleading, to wit, the third amended verified petition for writ of mandate, was then filed on July 12, 2013. In this petition, plaintiffs assert that the option to purchase airtime service credit was a vested contractual right and, thus, that the Legislature's withdrawal of this right when amending section 20909 and enacting section 7522.46 was a violation of the contracts clause of the California Constitution (Cal. Const., art. I, § 9). Accordingly, plaintiffs, reasoning that CalPERS lacks authority to enforce unconstitutional laws, sought a writ of mandate to compel CalPERS and those acting on its behalf to continue to allow purchase of the airtime service credit.

The State of California subsequently intervened in this lawsuit for the purpose of defending the amended statutory scheme. A writ hearing was held on February 24, 2014, followed by the trial court's filing of the Amended Final Order on June 5, 2014. In this order, the trial court concluded that the elimination of the option of a state employee to purchase up to five years of retirement service credit did not impair or violate any pension right of plaintiffs because, even if this option could be deemed a vested benefit, "the Legislature lawfully eliminated that benefit as a permissible modification to the pension plan." Accordingly, the trial court entered judgment denying plaintiffs' petition for writ of mandate and injunctive relief, and directing that CalPERS and the intervening State of California recover costs as permitted by law. This appeal followed.

## DISCUSSION

The overarching issue in this appeal relates to the proper construction of section 20909 and, more specifically, whether the Legislature intended upon its enactment in 2003 to bestow upon plaintiffs and other CalPERS members a vested contractual right to purchase airtime service credit. We begin with the relevant legal framework.

---

[2] Plaintiff Shaun Olden is the sole member of the plaintiff class not eligible to make this purchase because, while employed by the state during this time period, he had not yet served the mandatory five years for eligibility under section 20909.

4

"A writ of mandate lies 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . .' [Citation.] ' "Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation]." [Citation.]' [Citation.] [¶] As to the petitioner's interest, the writ may not be issued where the injury is purely theoretical and the petitioner fails to show any benefit would accrue to him if the writ were issued, or that he will suffer any detriment if it is denied. [Citations.]" (*Steelgard, Inc. v. Jannsen* (1985) 171 Cal.App.3d 79, 83.) Further, " 'mandamus will not lie to compel the performance of any act which would be void, illegal or contrary to public policy.' [Citation.]" (*Torres v. City of Montebello* (2015) 234 Cal.App.4th 382, 403; see also *Moran v. California Dep't of Motor Vehicles* (2006) 139 Cal.App.4th 688, 691.)

On appeal, we apply the substantial evidence standard of review to a trial court's factual findings in granting or denying a writ of mandate, while independently reviewing its conclusions on legal issues, including legislative intent. (*City of San Diego v. San Diego City Employees' Ret. System* (2010) 186 Cal.App.4th 69, 78; see also *CalPERS Bd. of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1129 ["The ultimate questions of whether vested contractual rights exist and whether impairments are unconstitutional present questions of law subject to independent review"].)

Here, as stated above, plaintiffs assert a vested contractual right to purchase up to five years of airtime service credit that is not subject to elimination or destruction by legislative amendment or repeal "even *before the benefit has been accessed or the time for retirement has arrived.*" (See *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 855 ["While payment of these [pension] benefits is deferred, and is subject to the condition that the employee continue to serve for the period required by the statute, the mere fact that performance is in whole or in part dependent upon certain contingencies does not prevent a contract from arising, and the employing governmental body may not deny or impair the contingent liability any more than it can refuse to make the salary payments

5

which are immediately due."] [*Kern*].) Plaintiffs reason that, when their civil service began, the right to purchase airtime service credit was one of the terms and conditions of their employment and, as such, the Legislature had no authority to effectively repeal this right by amending section 20909 and adding section 7522.46 in 2013, during the course of their employment.[3] Accordingly, plaintiffs contend that a violation of the contracts clause of the California Constitution has occurred, and ask this court to issue a peremptory writ ordering CalPERS to immediately resume administration of the service credit purchases by making them available to state employees employed prior to January 1, 2013, who otherwise meet the service credit eligibility requirements.

As respondents point out, however, in challenging the amended statutory scheme as contrary to our Constitution, plaintiffs face certain legal hurdles. "The party asserting a contract clause claim has the burden of making out a clear case, free from all reasonable ambiguity, a constitutional violation occurred." (*Deputy Sheriffs' Assn. of San Diego County v. County of San Diego* (2015) 233 Cal.App.4th 573, 578.) " 'When the Constitution has a doubtful or obscure meaning or is capable of various interpretations, the construction placed thereon by the Legislature is of very persuasive significance.' " (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 693.)

The reason for the elevated burden on plaintiffs raising a constitutional challenge under the contracts clause is this. " 'The state occupies a unique position in the field of contract law because it is a sovereign power. This gives rise to general principles which may limit whether an impairment has [occurred] as a matter of constitutional law. First, "[a]n attempt must be made 'to reconcile the strictures of the Contract Clause with the

---

[3]     When enacted in 2003, section 20909 allowed a "member who has at least five years of credited state service" to purchase "not less than one year, nor more than five years, in one-year increments, of additional retirement service credit in the retirement system." This purchase could only occur one time, at any time prior to retirement. (§ 20909, subds. (a), (b).) In 2013, the Legislature added subdivision (g) to section 20909, providing, in accord with section 7522.46, that "[t]his section shall apply only to an application to purchase additional retirement credit that was received by the system prior to January 1, 2013, that is subsequently approved by the system." (Stats 2013 ch 526 § 13 (SB 220), effective January 1, 2014.)

6

"essential attributes of sovereign power," . . .' " [Citation.] "Not every change in a retirement law constitutes an impairment of the obligations of contracts, however. [Citation.] Nor does every impairment run afoul of the contract clause." [Citation.] " 'The constitutional prohibition against contract impairment does not exact a rigidly literal fulfillment; rather, it demands that contracts be enforced according to their "just and reasonable purport;" not only is the existing law read into contracts in order to fix their obligations, but the reservation of the essential attributes of continuing governmental power is also read into contracts as a postulate of the legal order. [Citations.] The contract clause and the principle of continuing governmental power are construed in harmony; although not permitting a construction which permits contract repudiation or destruction, the impairment provision does not prevent laws which restrict a party to the gains 'reasonably to be expected from the contract." [Citation.]' " ' [Citation.] . . . [¶] 'Our analysis requires a two-step inquiry into: (1) the nature and extent of any contractual obligation . . . and (2) the scope of the Legislature's power to modify any such obligation.' [Citation.]" (*CalPERS Bd. of Administration v. Wilson, supra,* 52 Cal.App.4th at pp. 1130-1131.)

Thus, the initial question here is whether plaintiffs lawfully claim a vested contractual right to airtime service credit as part of their pension benefits. As explained in plaintiffs' authority, "A public employee's pension constitutes an element of compensation, and a vested contractual right to pension benefits accrues upon acceptance of employment. Such a pension right may not be destroyed, once vested, without impairing a contractual obligation of the employing public entity. [Citation.] [However, the] employee does not obtain, prior to retirement, any absolute right to fixed or specific benefits, but only to a 'substantial or reasonable pension.' [Citation.] Moreover, the employee's eligibility for benefits can, of course, be defeated 'upon the occurrence of a condition subsequent.' [Citation.]" (*Betts v. Board of Administration of Public Employees' Retirement System* (1978) 21 Cal.3d 859, 863, 864 (*Betts*).)

"[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no

employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law. [Citations.] Nor is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that '[the] terms and conditions of civil service employment are fixed by statute and not by contract.' [Citations.] Indeed, '[the] statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith.' [Citation.]" (*Miller, supra,* 18 Cal.3d at pp. 813-814.)

Thus, when applying these principles, we must keep in mind the presumption that "a statutory scheme is not intended to create private contractual or vested rights and a person who asserts the creation of a contract with the state has the burden of overcoming that presumption." (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1186, 1189 [*Retired Employees Assn.*].) As such, plaintiffs carry the heavy burden of proving the retirement service credit is a vested pension right. Specifically, plaintiffs must meet the "heavy burden" of demonstrating that " 'the statutory language and circumstances accompanying its passage clearly ". . . evince a legislative intent to create private rights of a contractual nature enforceable against the State . . . ." ' " (*Retired Employees Assn., supra,* 52 Cal.4th at p. 1189.) A contractual right may also be implied from legislation "in appropriate circumstances." (*Id.* at p. 1190.) However, " 'as with any contractual obligation that would bind one party for a period extending far beyond the term of the contract of employment, implied rights to vested benefits should not be inferred without a clear basis in the contract or convincing extrinsic evidence.' " (*Requa v. Regents of University of California* (2012) 213 Cal.App.4th 213, 226.)

Within this legal framework, plaintiffs theorize the prior version of section 20909 created, not an implied vested right, but an "express vested right" to purchase the airtime service credit. They reason that section 20909, enacted as part of the Public Employees' Retirement Law, section 20000 et seq., was a component of the retirement plan adopted on their behalf by the Legislature. As such, plaintiffs reason, CalPERS members relied

8

upon the option to purchase the service credit as part of their "contemplated compensation" in exchange for performing labor for the state.[4]

However, as the trial court found, there is nothing in either the text of the statute (§ 20909), or its legislative history, that unambiguously states an intent by the Legislature to create a vested pension benefit. This demonstration of intent, as we explained above, is required by California law. (*Retired Employees Assn., supra,* 52 Cal.4th at p. 1190.) Section 20909, however, does no more than permit an eligible member to "elect, by written notice filed with the board, to make contributions pursuant to this section and receive not less than one year, nor more than five years, in one-year increments, of [airtime service credit.]" In other words, eligible members may choose to pay the designated amount in exchange for up to five years of this service credit, wholly distinct and apart from their provision of labor for the state in exchange for compensation. (§ 20909, subd. (a); see also § 20909, subd. (b) ["A member may elect to receive this additional retirement service credit . . . by making the contributions as specified in Sections 21050 and 21052"].) While plaintiffs point to the statutory language, "at any time," in subdivision (b) of the statute to argue the Legislature intended to create a vested right, we agree with the trial court this phrase means just what it says and no more – to wit, eligible employees could opt to purchase the service credit at any time, at least so long as the statute remained in effect. We decline to add to this straightforward reading of this statutory phrase any promise by the Legislature *not to modify or eliminate* the option to purchase service credit, particularly in light of the legal presumption *against* the creation of a vested contractual right. To the contrary, we agree with the trial court that the Legislature could have – and would have – used much clearer language if it had in fact harbored such intent. (*Retired Employees Assn., supra,* at p. 1186 [courts must apply a presumption against reading a statute as creating a private contractual or vested right].) In the absence of any such clear statutory language, we reject plaintiffs' contention that there is an "express vested right" to purchase the airtime service credit.

---

[4]  This argument is joined by amicus curiae in support of plaintiffs, which includes several local chapters of unions representing correctional officers and firefighters.

9

In so concluding, we acknowledge plaintiffs' reliance on statements made in CalPERS's "widely-read" publication, *Vested Rights of CalPERS Members: Protecting the Pension Promises Made to Public Employees*, to try to show the existence of a vested contract right to purchase airtime service credit. In particular, plaintiffs point to the following exert from the CalPERS material:

"Public employees obtain a vested right to the provisions of the applicable retirement law that exist during the course of their public employment. Promised benefits may be increased during employment, but not decreased, absent the employees' consent. [¶] These rules apply to all active CalPERS members whether or not they have yet performed the requirements necessary to qualify for certain benefits that are part of the applicable retirement law. For example, even if a member has not yet satisfied the five-year minimum service prerequisite to receiving most service and disability benefits, *the member's right to qualify for those benefits upon completion of five years of service vests as soon as the member starts work.*" (Italics added.)

We accept plaintiffs' point that CalPERS's statements on this issue are entitled to significant weight given the agency's designated role as administrator of the state's retirement system. (*Bernard v. City of Oakland* (2012) 202 Cal.App.4th 1553, 1565.) Nonetheless, the fact remains that, notwithstanding any statements or suggestions by CalPERS to the contrary (published or otherwise), California law is quite clear that the Legislature may indeed modify or eliminate vested pension rights in certain cases. As the California Supreme Court has explained: "Although vested prior to the time when the obligation to pay matures, pension rights are not immutable. For example, the government entity providing the pension may make reasonable modifications and changes in the pension system. This flexibility is necessary 'to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy.' (*Kern, supra*, 29 Cal.2d 848, 854-855; see also *Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180, 183 . . . ; *Packer* v. *Board of Retirement* (1950) 35 Cal.2d 212, 214 . . . .) In *Wallace*, referring to *Kern*, we again emphasized 'that a public pension system is subject to the implied qualification that the governing

10

body may make reasonable modifications and changes before the pension becomes payable and that until that time the employee does not have a right to any fixed or definite benefits but only to a substantial or reasonable pension.' (42 Cal.2d at p. 183.)" (*Miller, supra,* 18 Cal.3d at p. 816.)

"We have described the applicable principles as follows: 'An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citations.] Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, *and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.* [Citations.] . . .' [Citation.]" (*Betts, supra,* 21 Cal.3d at p. 864. Accord *Miller, supra,* 18 Cal.3d at p. 816 [" '[It] is advantage or disadvantage to the particular employees whose own contractual pension rights, already earned, are involved which are the criteria by which modifications to pension plans must be measured.' [Citation.]"].)

It is to this California Supreme Court authority, rather than to CalPERS statements, that we must defer. (See *Bernard v. City of Oakland, supra,* 202 Cal.App.4th at p. 1565 [while "the contemporaneous administrative construction of [an] enactment by those charged with its enforcement . . . is entitled to great weight," it is not controlling, particularly where "clearly erroneous or unauthorized"].) Were we to do otherwise, we would upset the proper functioning of a system designed to facilitate timely adaptation of the law in light of new or changing circumstances: "The rule permitting modification of pensions is a necessary one since pension systems must be kept flexible to permit adjustments in accord with changing conditions and at the same time maintain the

11

integrity of the system and carry out its beneficent policy."[5] (*Kern, supra,* 29 Cal. 2d at pp. 854-855.) Indeed, CalPERS itself acknowledged the possibility of legislative elimination of the airtime service credit in its member literature, warning in a document entitled, "What is Additional Service Credit (Frequently referred to as 'Air Time')," that the credit "will be available on an ongoing basis (*unless repealed by future legislation*)." (Italics added.)

And applying this legal standard to the case at hand, it is clear that, even if we had accepted plaintiffs' argument that the option to purchase airtime service credit under section 20909 was an express vested right (we did not), the Legislature nonetheless had ample authority to eliminate it through statutory amendment in light of the given circumstances. Specifically, as the trial court found in denying writ relief to plaintiffs, the undisputed legislative history demonstrates the "adoption of [section] 7522.46 and the addition of [section] 20909(g) were materially related to the theory and successful

---

[5] As recently noted by our First District appellate colleagues: "[T]here are acceptable changes aplenty that fall short of 'destroying' an employee's anticipated pension. 'Reasonable' modifications can encompass reductions in promised benefits. (E.g., *Miller, supra*, 18 Cal.3d 808 [change of retirement age with reduction of maximum possible pension]; . . . [repeal of cost of living adjustments]; *Brooks v. Pension Board* (1938) 30 Cal.App.2d 118 . . . [pension reduced prior to retirement from two-thirds to one-half of employee's salary].) Or changes in the number of years service required. (*Miller, supra*, at p. 818 ['Upon being required by law to retire at age 67 rather than age 70, plaintiff suffered no impairment of vested pension rights since he had no constitutionally protected right to remain in employment until he had earned a larger pension at age 70']; *Amundsen v. Public Employees' Retirement System* (1973) 30 Cal.App.3d 856 . . . [change in minimum service requirement].) Or a reasonable increase in the employee's contributions. (§ 31454; [citations]; cf. *Allen v. City of Long Beach, supra*, 45 Cal.2d 128, 131 [invalidating 'provision raising the rate of an employee's contribution . . . from 2 per cent of his salary to 10 per cent'].) [¶] Thus, short of actual abolition, a radical reduction of benefits, or a fiscally unjustifiable increase in employee contributions, the guiding principle is still the one identified by *Miller* in 1977: ' "the governing body may make *reasonable* modifications and changes before the pension becomes payable and that until that time the employee does not have a right to any fixed or definite benefits but only to a substantial or *reasonable* pension." ' " (*Marin Assn. of Public Employees v. Marin County Employees' Retirement Assn*. (2016) 2 Cal.App.5th 674, 702, review granted November 22, 2016, see Cal. Rules of Court, rules 8.1105(e)(1)(B), 8.1115(e).)

12

operation of a pension system because they restricted the pension system to providing retirement benefits based on work performed, which is the primary purpose of a pension system." In particular, the court referred to the Governor's "12 Point Plan," which indicated that pensions were intended to provide retirement stability for time "actually worked" rather than for mere "airtime." The court also referred to the legislative history of the PEPRA, which is consistent in noting the "traditional linkage between time worked and benefits received." In other words, pension benefits are "deferred compensation that has been earned through the performance of work," not, as here, an option to purchase nonqualifying service credit wholly unrelated to actual services provided or work performed. As such, the court went on to explain, when enacting section 20909 in 2003, the Legislature actually departed from the central theory of a pension system, and, conversely, when effectively repealing this legislation in 2013, the Legislature "eliminated something that was not related to the theory of a pension system and . . . was in fact detrimental to the successful operation of the pension system."

Plaintiffs do not challenge the trial court's findings or reasoning in concluding that a material relationship exists between the challenged legislative modifications that accompanied California's recent pension reform and the basic theory of the pension system and its successful operation. (Accord *Marin Assn. of Public Employees v. Marin County Employees' Retirement Assn*. (2016) 2 Cal.App.5th 674, 704-705 ["the catalyst for the Pension Reform Act was dire financial predictions necessitating urgent and fundamental changes to improve the solvency of various pension systems"] [*Marin Assn. of Public Employees*].)[6] Instead, plaintiffs challenge the trial court's additional finding that, in this instance, the amended statutory scheme eliminating the option to purchase airtime service credit resulted in no disadvantage to state employees. In this regard, the court pointed to statements in section 20909's legislative history that airtime service credit was never intended by the Legislature to provide state employees a monetary

---

[6] The California Supreme Court granted review in this matter on November 22, 2016. (See Cal. Rules of Court, rules 8.1105(e)(1)(B), 8.1115(e)).)

13

advantage because it did not correspond to any service actually performed. Rather, the credit was designed to be cost-neutral. (See, *e.g*., AB 719, Assembly Bill-Bill Analysis, p. 3 ["In this case, the member pays for the full cost of the increase in benefit that results from the service credit purchase. This cost method . . . applies when an employer does not directly benefit from the member's service"].)

Despite this legislative history, plaintiffs (as well as the amicus curiae supporting them) insist the right to purchase the airtime service credit was indeed financially beneficial, and that "no comparable advantage has been offered to offset the loss of [the elimination of this right]. This is barred under the Contracts Clause." We disagree.

First, plaintiffs suggest that the state was required to provide a comparable advantage to offset the loss arising from elimination of the option to purchase airtime service credit, citing *Allen v. City of Long Beach* (1955) 45 Cal. 2d 128. However, as our colleagues in this District recently explained after an exhaustive review of the case law: " 'Should' [provide some new compensating benefit], not 'must,' remains the court's preferred expression. And 'should' does not convey imperative obligation, no more compulsion than 'ought.' (*Lashley v. Koerber* (1945) 26 Cal.2d 83, 90 . . . ; see *People v. Webb* (1986) 186 Cal.App.3d 401, 409, fn. 2 . . . ['the word "should" is advisory only and not mandatory'].) In plain effect, 'should' is 'a recommendation, not . . . a mandate.' [Citation.]" (*Marin Assn. of Public Employees, supra,* 2 Cal.App.5th at p. 699, review granted November 22, 2016, see Cal. Rules of Court, rules 8.1105(e)(1)(B), 8.1115(e).) We agree with this conclusion reached by our colleagues and, as such, reject plaintiffs' claim that, absent proof that CalPERS members were granted a comparable advantage, the Legislature's elimination of the airtime service credit must be deemed constitutionally barred. (*Marin Assn. of Public Employees, supra,* 2 Cal.App.5th at p. 699 [concluding that California Supreme Court authority such as *Allen v. Board of Administration* (1983) 34 Cal.3d 114, 120, which used the term "must" rather than "should," was not meant to "introduce an inflexible hardening of the traditional formula for public employee pension

14

modification. Consequently, we do not deem ourselves bound by expressions in Court of Appeals opinions . . . reiterating the ["must"] language"].)[7]

Further, plaintiffs also disregard the fact that, when amending the statutory scheme governing pension rights, the Legislature in fact provided eligible CalPERS members (like plaintiffs) a several-month window in which to purchase the airtime service credit before the option terminated. Specifically, as set forth above, while PEPRA was enacted in September of 2012 (Stats 2012 ch 296 § 15 (AB 340)), the option to purchase airtime service credit did not expire until January 1, 2013, giving eligible members several weeks to apply to purchase this credit before its expiration. (§ 7522.46, subd. (b); see also § 20909, subd. (g) ["This section shall apply only to an application to purchase additional retirement credit that was received by the system prior to January 1, 2013, that is subsequently approved by the system"].) Thus, nothing in the revised statutory scheme immediately destroyed plaintiffs' right to purchase the airtime service credit; rather, the revised scheme set forth a deadline by which plaintiffs had to exercise this right in order to avoid losing it. To the extent plaintiffs lost out on the opportunity to purchase the airtime service credit, such loss was, accordingly, a product of their own doing.

And, finally, we agree with the trial court that, while the airtime service credit clearly provided something valuable for those state employees choosing to purchase it, the fact remains that the employees, not the state, paid for this benefit. (See § 21052; AB 719 Assembly Bill-Bill Analysis, p. 2 (Aug. 18, 2003) ["this benefit is intended to be cost neutral to employers. The member pays the full present value cost of the additional service credit . . . [which] is calculated to be equivalent to the cost of the increased benefit due to the additional service credit"]; AB 719, Assembly Bill-Bill Analysis,

---

[7] As explained in *Allen v. Board of Administration, supra,* 34 Cal.3d at pp. 119-120, " '[T]he contract clause and the principle of continuing governmental power [must be] construed in harmony; although not permitting a construction which permits contract repudiation or destruction, the impairment provision does not prevent laws which restrict a party to the gains "reasonably to be expected from the contract." ' [Citation.] Constitutional decisions "have never given a law which imposes unforeseen advantages or burdens on a contracting party constitutional immunity against change." ' [Citation.]"

15

Senate Rules Committee, p. 2 ["the cost of the 'air time' service credit will be fully paid by the member, with no employer contribution permitted"].)  As such, contrary to the arguments of plaintiffs and their amicus curiae, this simply is not a case where the state provided a retirement benefit to its employees in exchange for their work performance, and then took the benefit away, despite the employees' continued service, without offering a comparable benefit.

Thus, for all the reasons stated, we conclude plaintiffs' constitutional challenge to the identified PEPRA provisions must fail given their failure to make out a clear case, free from all reasonable ambiguity and reasonable doubt, that any contract clause violation occurred.  To the contrary, the record supports the trial court's conclusion that the Legislature's modification of the statutory law governing the airtime service credit was wholly reasonable and carried "some material relation to the theory of a pension system and its successful operation." (*Miller, supra,* 18 Cal.3d at p. 816.)  While plaintiffs may believe they have been disadvantaged by these amendments, the law is quite clear that they are entitled only to a "reasonable" pension, not one providing fixed or definite benefits immune from modification or elimination by the governing body. (*Kern, supra*, 29 Cal.2d at pp. 854-855.)  Plaintiffs have made no showing that, following the elimination of their right to purchase airtime service credit, their right to a reasonable pension has been lost.  (See *Marin Assn. of Public Employees, supra*, 2 Cal.App.5th at p. 707 ["Repeated invocation of the inviolability of their 'vested rights' cannot substitute for analysis of just how the change to [the statutory law] demonstrates that employees will not retire with a 'substantial' or 'reasonable' pension"], review granted November 22, 2016, see Cal. Rules of Court, rules 8.1105(e)(1)(B), 8.1115(e).)

Accordingly, plaintiffs' petition for writ of mandate and injunctive relief was properly rejected.  The judgment thus stands.[8]

---

[8]   Given this holding, we need not address the separate argument raised by CalPERS in its Respondent's Brief that, even if this court were to find a contract clause violation in this case, plaintiffs cannot meet the standard for issuance of a traditional writ of mandate because CalPERS has no ministerial duty to act contrary to the provisions of section

**DISPOSITION**

The judgment is affirmed.

_____
Jenkins, J.

We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.


*Cal Fire Local 2881 et al.* v. *California Public Employees' Retirement System et al.,* A142793

---

7522.46 or section 20909, subdivision (g).  (See *Torres v. City of Montebello, supra,* 234 Cal.App.4th at p. 403 [mandamus will not lie to compel the performance of an act that is illegal or contrary to public policy].)

Trial Court:                                Alameda County Superior Court


Trial Judge:                                Hon. Evelio M. Grillo


Counsel for Appellants Cal Fire           Gary M. Messing
Local 2881 et al.                          Gregg McLean Adam
                                           Jason H. Jasmine
                                           CARROLL, BURDICK & McDONOUGH LLP


Counsel for Respondents California        Matthew G. Jacobs
Public Employees' Retirement              Wesley E. Kennedy
System et al.                             CALIFORNIA PUBLIC EMPLOYEES'
                                          RETIREMENT SYSTEM


Counsel for Intervenor and                Kamala D. Harris, Attorney General of
Respondent, The State of California       California;
                                          Douglas J. Woods, Senior Assistant Attorney
                                          General;
                                          Tamar Pachter, Supervising Deputy Attorney
                                          General;
                                          Rei R. Onishi, Deputy Attorney General

                                          Nelson Ryan Richards
                                          California Attorney General's Office

*Cal Fire Local 2881 et al.* v. *California Public Employees' Retirement System et al.,* A142793

**Amicus Curiae in Support of Petitioners/Appellants Cal Fire Local 2881, et. al.**

| | |
|---|---|
| Counsel for Amicus Curiae<br>Ventura County Professional Fire<br>Fighters Association | Stephen H. Silver<br>Jacob A. Kalinski<br>SILVER, HADDEN, SILVER AND LEVINE |
| Counsel for Amicus Curiae<br>Lake County Correctional Officers'<br>Association;<br>Mendocino County Deputy Sheriffs'<br>Association;<br>Merced City Firefighters,<br>International Association of<br>Firefighters, Local 1479, AFL-CIO;<br>Napa City Firefighters Association,<br>International Association of Fire<br>Fighters, Local 3124, AFL-CIO;<br>Palo Alto Firefighters, International<br>Association of Fire Fighters, Local<br>1319, AFL-CIO;<br>Sacramento Area Firefighters,<br>International Association of<br>Firefighters, Local 522, AFL-CIO;<br>Santa Clara County Correctional<br>Peace Officers Association | David E. Mastagni<br>Isaac S. Stevens<br>Jeffrey R.A. Edwards<br>Erich A. Knorr<br>MASTAGNI HOLSTEDT, APC |
| Counsel for Amici Curiae IFPTE<br>Local 21, et al. | Peter W. Saltzman<br>Kate Hallward<br>LEONARD CARDER, LLP |