# IN THE COURT OF APPEALS OF IOWA

No. 17-0266
Filed September 13, 2017

**MICHAEL PAUL VALDE,**
        Plaintiff-Appellant,

**vs.**

**EMPLOYMENT APPEAL BOARD and
IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Johnson County, Mitchell E.

Turner, Judge.


        An Iowa Public Employees' Retirement System recipient appeals from an

adverse benefits calculation.  **AFFIRMED.**



        Michael Paul Valde, Coralville, pro se.

        Thomas J. Miller, Attorney General, and Lucas W. Dawson and David L.D.

Faith II, Assistant Attorneys General, for appellees.



        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Michael Valde appeals from the district court's denial of his request for relief on judicial review. Valde asserts that his contract and property rights in his Iowa Public Employees' Retirement System (IPERS) public pension benefits were contravened in violation of the Iowa Constitution and the United States Constitution.

## I.      Facts and Background

The facts in this case are undisputed. Valde was employed with the State in an IPERS-covered position from 1977 through 1981, 1991 through 1996, and 1999 through most of 2002. Combining these periods, Valde had a total of thirteen-and-a-half years of IPERS-covered service. When Valde left IPERS-covered employment in 2002, he was not yet eligible to retire.

In 2015, Valde filed an application for IPERS retirement benefits. IPERS sent Valde a letter of award notifying him of a monthly retirement benefit of $1,667.49 based on a final average salary of $86,752.27. IPERS used Valde's salary from 2000 through 2002 (the "calendar method") to calculate this figure. The calendar method was set out in the governing statute in 2015. Valde appealed to IPERS claiming the formula used was incorrect and that the agency should have used the average of his highest twelve consecutive quarters of service (the "quarter method") for a final average of salary of $89,755.47. Valde claimed that he was entitled to the quarter method since a statute in effect in 2002—when he left IPERS-covered employment—arguably provided for such a formula. Valde claimed a constitutional property and contract interest in the 2002 level of benefits.

In 2016, IPERS made a final agency determination in favor of the calendar method. The determination was based on two rationales. First, under Iowa Code chapter 97B (2016) and the surrounding administrative rules, IPERS was required to apply the law and formula in effect on the date of the member's retirement. These rules were all in place prior to 2002. Second, while the Iowa General Assembly enacted legislation in 2000 to implement the quarter method at a future date, that legislation was repealed before such a future date ever occurred. Therefore, the quarter method was never actually used in calculating awarded benefits.

Valde appealed the final agency determination. A hearing on the matter occurred before an administrative law judge (ALJ). The ALJ entered a proposed decision in favor of IPERS. Valde appealed to the Employment Appeal Board, which adopted the proposed decision. Finally, Valde filed a petition for judicial review pursuant to Iowa Code section 17A.19 arguing IPERS violated his constitutionally protected contract and property rights. In January 2017, the district court denied the request for relief concluding there is "no property or contract right in a retirement payment system." Valde appeals.

## II. Standard of Review

Typically, appeals from administrative decisions are reviewed for substantial evidence. *See Titan Tire Corp. v. Emp't Appeal Bd.*, 641 N.W.2d 752, 754 (Iowa 2003). However, we review constitutional law challenges de novo. *Adair Benev. Soc. v. State*, 489 N.W.2d 1, 3 (Iowa 1992) ("Usually when fact questions in a contested case are involved, we apply the substantial

evidence standard under section 17A.19(8)(f). But because constitutional issues are raised here, our review is de novo.").

### III.    Analysis

Valde contends his constitutional contract and property interests in his pension were violated when the calendar method was applied to his benefit calculation. In Iowa, "allowances paid to public employees from retirement funds, in part maintained by them, is that such allowances are not pure pensions, gratuities, or bounties, but are given in consideration of services which were not fully recompensed when rendered." *Talbott v. Indep. Sch. Dist. of Des Moines*, 299 N.W. 556, 563 (Iowa 1941). "[T]he fact that these retirement or disability payments are not gratuities, is not, in our judgment, sufficient to give to them the character of a property, or a vested, right, or a contract right, which can not be adversely affected by subsequent legislation . . . ." *Id.*; *see also City of Iowa City v. White*, 111 N.W.2d 266, 270 (Iowa 1961) (reaffirming *Talbott* and holding it is "the statutes in force when a pensioner's application is filed" and not the date of injury that controls the pension benefits in the case of disability); *Nelson v. Bd. of Dirs. of Indep. Sch. Dist. of Sioux City*, 70 N.W.2d 555, 560 (Iowa 1955) (holding "plaintiffs had no such vested or contract rights in the local system or in pensions thereunder as to make invalid the acts of the Board"). Simply put, public pension benefits in Iowa are not vested property or contract rights.

Valde also argues IPERS newsletters created a constitutionally protected contractual interest. He cites the following statements from newsletters issued during the time IPERS was anticipating a change from the calendar method to the quarter method:

> VI. Benefit Calculations
> Average Salary Definition
> IPERS received an extension of the implementation date for the scheduled change to the final average salary calculation to July 1, 2005. The scheduled change eliminates "computed years" in favor of a highest 12 consecutive quarters calculation. In order to minimize risk to the system due to possible implementation problems, additional time for design and testing was requested and granted by the General Assembly.
>
> Reduce benefits. The BAC and Investment Board did not recommend this option because it would not be effective. Benefits already earned cannot be reduced. This liability is already in place. Future benefits, including all benefits for new employees, can be reduced. However, there would not be a positive funding impact for 15 to 20 years.

However, Valde provides no authority in support of this language creating a vested contract right. The very passages he cites mention delayed implementation and uncertainty as to the quarter method. Further, newsletter and employee manual statements do not have force and effect of law. *See Anderson v. Iowa Dep't of Human Servs.*, 368 N.W.2d 104, 108 (Iowa 1985) (recognizing a statement in an employment manual was not a validly adopted agency rule with the force of law); *see also Cal Fire Loc. 2881 v. Cal. Pub. Emp'rs Ret. Sys.*, 212 Cal. Rptr. 3d 471, 480 (Cal. App. 2016) ("[W]e acknowledge plaintiffs' reliance on statements made in CalPERS's 'widely-read' publication, *Vested Rights of CalPERS Members: Protecting the Pension Promises Made to Public Employees*, to try to show the existence of a vested contract right to purchase airtime service credit . . . . Nonetheless, the fact remains that, notwithstanding any statements or suggestions by CalPERS to the contrary (published or otherwise), California law is quite clear that the Legislature may indeed modify or eliminate vested pension rights in certain cases.").

Valde urges this court to reverse *Talbott* in favor of a more modern contractual rights approach. He identifies several states that have adopted this approach towards public pensions. However, this is not the approach Iowa has taken. *See Talbott*, 299 N.W. at 563. Additionally, this court is not at liberty to overturn controlling supreme court precedent. *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990).

It is also worth noting Valde has been unable to establish even under the 2002 law he would be entitled to a quarter method benefit calculation. IPERS chief benefits officer testified at the administrative hearing that the quarter method was never implemented, no one ever retired under the quarter method, and if Valde were to have his benefits calculated under this method, he would be the "first person." Under the law of 2002, Valde would still not be entitled to a quarter method calculation. Even absent the *Talbott* case, Valde lacks a cognizable claim for government interference with his constitutional rights.

Consequently, we affirm the district court's denial of Valde's request for relief on judicial review.

**AFFIRMED.**