[L. A. 21038. In Bank. Apr. 25, 1950.]

DELLA MAE PACKER, Appellant, v. BOARD OF RETIRE-
MENT OF THE LOS ANGELES COUNTY PEACE
OFFICERS' RETIREMENT SYSTEM et al., Respond-
ents.

Gordon M. Snyder for Appellant.

Harold W. Kennedy, County Counsel, and Edward H.
Gaylord, Deputy County Counsel, for Respondents.

GIBSON, C. J.—The widow of Glen J. Packer, a retired peace officer, brought this proceeding in mandamus to compel respondent board to pay her a pension. She has appealed from the judgment of dismissal entered upon the sustaining of a demurrer to her petition.

The County Peace Officers' Retirement Law, enacted in 1931, provided for a widow's pension if the officer had been disabled in the line of duty. (Stats. 1931, ch. 268, § 11; Deering's Gen. Laws [1931], Act 5848, § 11. The Retirement Law is now a part of the Government Code, § 31900 et seq.) In 1937 it was amended to extend pension rights to the widow or children of any peace officer who died after retirement.[1] The law was again amended in 1941 to provide that an officer might obtain a pension for his widow by exercising an option to take a lesser pension for himself during his life, and all other provisions for a widow's pension were eliminated except where the officer died as a result of a service-connected disability or was retired for such a cause.[2] The Packers were married in 1905, and in 1926 he commenced working as a deputy sheriff for Los Angeles County. He retired in 1946 at the age of 63 after serving the number of years required to entitle him to a pension. It is not claimed that Packer ever exercised the option which would have entitled his widow to

---

[1]The 1937 amendment to section 11 of the act provided that, with certain limitations not pertinent here, the flat sum of $75 per month should be paid to the widow or children of a peace officer who "shall be killed, or die, as a result of any injury received during the performance of his duty, or from sickness caused by the discharge of such duty, or *after retirement*, or while eligible to retirement on account of years of service. . . ." [Italics added.] (Stats. 1937, ch. 303, pp. 664-665.)

[2]The portion of section 11 pertaining to widows' pensions was amended to read, in part: "Whenever any member shall be killed, or die, as a result of any injury received during the performance of his duty, or from sickness caused by the discharge of such duty, or *after retirement for service connected disability*, an annual pension shall be paid in equal monthly installments to his widow, or child or children, in an amount equal to one-half of such member's terminal salary; provided, that such pension shall in no case be more than one hundred fifty dollars ($150) per month. . . ." [Italics added.] (Stats. 1941, ch. 745, pp. 2271-2272.)

Section 11.5, enacted in 1941, reads: "At any time before the first payment on account of any pension is made, or within 60 days after the effective date of this section, a member or beneficiary may elect to receive the actuarial equivalent at that time of his pension in a lesser pension payable throughout his life and that of his widow, if she survives him, in accordance with one or the other of the following options: Option 1: Upon his death, such lesser pension shall be continued throughout the life of and paid to his widow. Option 2: Upon his death one-half of such lesser pension shall be continued throughout the life of and paid to his widow." (Stats. 1941, ch. 745, p. 2273.)

a pension, or that his retirement was due to a service-connected disability, or that his death, which occurred in 1947, was the result of such a disability.

The 1941 amendment was part of a substantial revision of the Retirement Law which, as we shall see, embraced both advantages and disadvantages to county peace officers. It applied to all officers, who, like Packer, were then in active service and not eligible for retirement. Although it was held in *Chaney* v. *Los Angeles County Retirement Board*, 59 Cal.App.2d 413 [138 P.2d 735], that a widow was entitled to a pension under the 1937 act where her husband retired before and died after the effective date of the 1941 amendment, such is not the case here.

If the act as amended in 1937 had remained unchanged, petitioner would clearly be entitled to a pension, and the question is whether application to petitioner of the 1941 amendment constituted an impairment of the county's contractual obligations. The determination of this question depends upon the nature and extent of the contractual obligations arising out of Packer's continued employment after the enactment of the 1937 statute.

The general problem of the power of a governmental body to revise its pension system was recently considered in *Kern* v. *City of Long Beach*, 29 Cal.2d 848 [179 P.2d 799], where, as here, the pension law in effect at the time the employee performed his duties contained no express reservation of the right to repeal or modify the existing plan. We there held that a public employee, as a part of his compensation, obtained a vested right to a pension upon entering his duties under such a statute and that the right, once acquired, could not be wholly destroyed by repeal of the pension law prior to time for his retirement. It was recognized, however, that the employee was not entitled to any fixed or definite benefits, but only to a substantial pension, and that the statutory language was subject to the implied qualification that the governing body may make reasonable modifications and changes in the system. (*Kern* v. *City of Long Beach*, 29 Cal.2d 848, 855 [179 P.2d 799].) As stated in the Kern case: "The rule permitting modification of pensions is a necessary one since pension systems must be kept flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy." (29 Cal.2d at pp. 854-855.)

Petitioner does not dispute these principles but asserts, first,

that her husband's service under the 1937 provision gave her, as a third party beneficiary, a *separate,* vested right to a widow's pension which the 1941 amendment wholly destroyed, contrary to the decision in the Kern case, and, second, that even if she did not have a separate right, the 1941 amendment exceeded any permissible modification of her husband's pension rights.

■ *Did petitioner have a separate vested right to a pension?*

It may be conceded that a widow's rights are vested after her pension becomes payable and that she may then maintain an action to enforce the obligation of the governmental body. (*Kavanagh* v. *Board of Police P. F. Comm'rs.,* 134 Cal. 50 [66 P. 36].) It does not necessarily follow, however, that petitioner had a separate right which vested prior to the 1941 amendment. As stated above, the decisions make it clear that pensions for public employees are based upon the theory that such a pension is an integral part of the employee's compensation under his contract of employment, and that one of the primary purposes of offering a pension, as additional compensation, is to induce competent persons to enter and remain in public service. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848, 851-853, 855, 856 [179 P.2d 799]; *French* v. *French,* 17 Cal.2d 775, 777 [112 P.2d 235]; *Dryden* v. *Board of Pension Commrs.,* 6 Cal.2d 575, 579 [59 P.2d 104].) A pension to an employee's widow, however, is not given because of services rendered by her to the governmental body but is one of the elements of compensation held out to her husband.

In *Sweesy* v. *L. A. etc. Retirement Board,* 17 Cal.2d 356, 363 [110 P.2d 37], the granting of a pension to the widow of an officer who had previously retired was upheld on the ground that the widow's pension was merely an increase of benefits to the officer who already had a pensionable status. Although the court in that case recognized that the retired employee had vested pension rights (17 Cal.2d at p. 361), the status of the widow's right was carefully distinguished (17 Cal.2d at p. 362): "It is not to be understood from the foregoing, however, that the provision for an increase in benefits to the retired member by means of a pension to his widow becomes a vested right prior to the happening of a contingency upon which the payment of the widow's pension depends. As aptly shown by the decision in *Jordan* v. *Retirement Board, supra* [35 Cal. App.2d 653 (96 P.2d 973)], the grant of a pension to the

member's widow is an increase of benefits which may be taken away before the right vests by the happening of the event calling for the fulfillment of the grant. In this case the provision for pension to members' widows benefits all members, whether on active or retired duty; but as to any prospective grantee of the pension it is an inchoate right which may be taken away at any time before it becomes vested in her."

The Jordan case, cited in the Sweesy opinion, held that a provision for a widow's pension, adopted after retirement of her husband, could be repealed prior to his death. In answer to the widow's contention that the provision for a pension to her became a part of her husband's contract of employment and could not be taken away, the court stated that "a pensioner has no vested right to a specific sum as a pension, but that sum may be increased or decreased according to correspondent increases or decreases in the salary of the rank upon which the pension is based." (35 Cal.App.2d at p. 658.) Another line of cases upheld revision of a pension system although the substituted plan, by eliminating a lump sum payment to legal representatives, constituted a complete repeal of benefits to certain classes of persons who would have received money under the former provision. (*Pennie* v. *Reis,* 80 Cal. 266 [22 P. 176] (affirmed in 132 U.S. 464 [10 S.Ct. 149, 33 L.Ed. 426]) ; *Clarke* v. *Reis,* 87 Cal. 543 [25 P. 759] ; *Clarke* v. *Police Etc. Ins. Board,* 123 Cal. 24 [55 P. 576].)

It is apparent, therefore, that the cases have not treated provisions for pensions to widows of public employees as separate, vested rights. Rather, a widow's interest, prior to her husband's death, has been considered to be merely a part of the husband's pension benefits and as such subject to being wholly eliminated, provided, of course, that the total change in the husband's pension rights does not exceed the permissible bounds of a modification. It may be conceded that the husband's pension rights derived from his employment during marriage are community property, but this does not furnish any basis for the claim that the widow has a separate, vested right to a pension that is different from her community interest in her husband's pension rights.

Petitioner argues that her claim to a separate, vested right finds support by analogy in the cases construing life insurance policies which hold that the named beneficiary obtains a vested right upon delivery of the policy. The rule of construction pointed to by petitioner has been adopted with respect to ordinary life insurance when the policy contains

no reservation of the power to change the beneficiary. (*Morrison* v. *Mutual L. Ins. of N. Y.*, 15 Cal.2d 579, 582 [103 P.2d 963]; see Vance on Insurance [2d ed., 1930], §§ 144-146; 2 Appleman, Insurance Law and Practice [1941], §§ 911, 913.) The opposite rule is applied to insurance contracts of mutual benefit associations, and with respect to these it is held that the beneficiary obtains no rights until the insured's death in the absence of restriction by statute, by-laws, or other specific provision or the giving of consideration by the beneficiary. (*Vawter* v. *Purdy*, 29 Cal.App. 623 [157 P. 556]; see *Phoenix Mutual L. Ins. Co.* v. *Birkelund*, 29 Cal.2d 352, 360 [175 P.2d 5]; Vance on Insurance [2d ed., 1930], § 153; 2 Appleman, Insurance Law and Practice [1914], §§ 902, 912; 2 Williston on Contracts [Rev. ed., 1936], § 396-A.) The text writers have found difficulty in explaining the different treatment accorded to the two types of insurance, but it has been suggested as the basis of distinction that the primary purpose of a mutual benefit association is benevolent, that only members have the privilege of securing insurance therein, and that membership can be acquired only upon complying with the requirements of the association. (See Vance on Insurance [2d ed., 1930], § 153.) Some of these factors are present in an employees' pension system. In any event, however, the insurance cases are not controlling here. It has been said that "the insurance decisions form a class by themselves, and but little reference is made in them to the general law of contracts." (2 Williston on Contracts [Rev. ed., 1936], § 369; see, also, Vance on Insurance [2d ed., 1930], § 146; 12 Columb. L.Rev. [1912], §§ 551, 552.)

We can find no reason for departing from the decisions which have stated that the wife of a public employee does not acquire a vested interest in a pension until it becomes payable to her. A different rule, in fact, would remove a considerable amount of the flexibility necessary for operation of pension systems, because it would mean that provisions benefiting any third person would be frozen into the law with respect to all employees then in service and that these interests could not be removed regardless of the consent of the employee and regardless of whether the employee was given other pension benefits which might be of greater value to him than the one sought to be eliminated. Thus, although all pension rights are earned by the employee and are part of his compensation, the rule urged by petitioner could operate to

the disadvantage of the employee by making it impossible or impracticable for the governmental body to substitute a new system, designed to meet changing conditions, which would furnish a greater total benefit to the employee than he formerly had.

It appears, therefore, that both the cases and the policy underlying pensions for public employees indicate that any one or more of the various benefits offered, including interests created for third persons, may be wholly eliminated prior to the time they become payable, provided, of course, the employee retains the right to a substantial pension. Accordingly, it must be held that petitioner did not obtain a separate, vested right under the 1937 statute.

■ *Were Packer's pension rights unreasonably modified by the 1941 amendment?*

The next question is whether the 1941 revision of the Retirement Law constituted a permissible modification of the pension rights of county peace officers, such as Packer, who were then in active service. A comparison of the statutes shows that under certain circumstances the 1941 law would give county peace officers and their families greater benefits than they had before, and the changes, considered as a whole, did not exceed the bounds of a reasonable modification. For example, under the 1937 provision the flat sum of $75 per month was payable to any widow entitled to a pension, or, if there were no eligible widow, to any child or children under the age of 18. Under the 1941 statute, however, the widow or children of an officer who had died as a result of injury or sickness resulting from his service, or who had died from any cause after he had been retired because of a service-connected disability, would receive an amount equal to one-half of the officer's terminal salary but not to exceed $150 per month, which is double the amount provided in the former law. Further, as we have seen, petitioner could have had a pension, although reduced in amount, if Packer had elected to avail himself of the option afforded by the 1941 amendment which in effect gave any member of the system the right to have his pension payments divided between himself and his widow, the amounts payable to each being reduced according to actuarial principles.

The basic conditions under which a county peace officer could obtain a pension were substantially unchanged. Both before and after 1941 he could retire and receive payments amounting to half his terminal salary, not exceeding $150 per month, if his retirement was due to a service-connected dis-

ability or if he had served for 20 years and reached the required age. (Retirement Law, §§ 11, 12.) Likewise, in both cases he could receive a pension after ten years' service if his retirement resulted from a nonservice disability, although the amounts were reduced by the 1941 amendment. (Retirement Law, § 11.)

Because of the nature of the changes made in 1941 it would be difficult, if not impossible, to determine whether, as to an employee still on active duty, the total value of all pension rights, considered together, had been reduced and, if so, to what monetary extent. It is reasonably clear from the foregoing, however, that the employees, including Packer, retained rights to substantial pension benefits and, accordingly, that the 1941 revision did not exceed the scope of a permissible modification. We hold, therefore, that deletion of the provision under which petitioner would have been entitled to a pension was not an unconstitutional impairment of the county's obligation and that the trial court correctly concluded that her petition did not state facts entitling her to a writ.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied May 22, 1950.