[S. F. No. 18884. In Bank. Jan. 29, 1954.]

R. T. WALLACE et al., Appellants, v. CITY OF FRESNO et al., Respondents.

Lawrence W. Young for Appellants.

C. M. Ozias, City Attorney, for Respondents.

GIBSON, C. J.—R. T. Wallace was a member of the police department of the city of Fresno from 1921 until July 30, 1949, when he retired at the age of 55 with the rank of chief of police. He was paid a pension of $150 a month until June 1952, when the pension board of the city, upon being informed that he had recently been convicted of preparing a fraudulent federal income tax return, a felony, ordered that the pension be discontinued as to him but that it be paid to his wife during his imprisonment and then terminated forever. Wallace and his wife brought this proceeding in

mandamus to compel the city to pay a pension to him during his life and upon his death to his wife for her life. The judgment denied relief as to Wallace but directed the pension board to modify its order by either denying Mrs. Wallace a pension or granting her a pension for life. The Wallaces have appealed from the judgment.

When Wallace entered the police department the city charter authorized the establishment by ordinance of a pension system for members of the police and fire departments who are disabled or become superannuated in the service of the city. In 1923 an ordinance was enacted which provided that after 25 years' service any member who reached the age of 50 years should be entitled to retirement on a pension and that no removal of a member from the department after 25 years' service should operate to deprive him of pension benefits except when ordered for habitual drunkenness, notorious insubordination, or conviction of a felony or crime involving moral turpitude.* It was further provided that if a member retired on a pension and died leaving a widow, the pension should be payable to her during her lifetime or until she should remarry.

Substantially the same provisions were contained in a new ordinance, enacted in 1927, which added a section reading: "Whenever any person who shall receive any pension from the pension fund as provided herein, . . . shall be convicted of a felony or crime involving moral turpitude, become dissipated or become nonresident of this state except by permission of the board, then said board may, after notice to the pensioner, order that the pension allowance of said person shall immediately cease and terminate; and the pension board in its discretion may order the pension or allowance to be paid to the dependents of said pensioner. . . ." The 1927 ordinance also increased the retirement age to 55 years and speci-

---

*Section 2 of the 1923 ordinance provided: "After twenty-five years service any member who has reached the age of fifty years shall as a matter of right be entitled on his application to retirement on a pension equal to fifty (50) per cent of the annual salary of the rank or position held by such member one year prior to such retirement plus an additional one and two thirds (1⅔) of such salary for each year over twenty years and under thirty years, in the aggregate, served by such member before retirement; provided that no removal of any member from the department after such twenty-five years service shall operate to deprive him of the benefits of this section except when such removal be for habitual drunkenness, notorious insubordination, or conviction of a felony or crime involving moral turpitude and then only in the event the commission in its discretion order that such removal operate to deprive such member of the benefit of the provisions hereof."

fied that if there was a subsequent change in salary for the rank held by a retired member the pension should be calculated upon the basis of the salary as changed but should not exceed the sum of $150 per month. It was further provided that in case of a great public emergency any retired person might be assigned to perform duties by the chief of his department. An amendment adopted in May 1938 required that each member of the fire and police departments, commencing on July 15, 1938, pay into the pension fund 4 per cent (later increased to 4½ per cent) of each month's salary. In 1946 a new ordinance was enacted which superseded the 1927 ordinance but contained provisions practically identical with those set forth above.

 A public employee who serves under pension provisions similar to those contained in the 1923 ordinance acquires a vested contractual right to a substantial pension. This right arises before the happening of the contingency which makes the pension payable, and it cannot be constitutionally abolished by subsequent changes in the law.* (*Kern* v. *City of Long Beach,* 29 Cal.2d 848, 852 et seq. [179 P.2d 799].) In discussing the nature of an employee's rights we recognized in the Kern case that a public pension system is subject to the implied qualification that the governing body may make reasonable modifications and changes before the pension becomes payable and that until that time the employee does not have a right to any fixed or definite benefits but only to a substantial or reasonable pension. (29 Cal.2d at p. 855. To the same effect see *Packer* v. *Board of Retirement,* 35 Cal.2d 212, 214, 218-219 [217 P.2d 660].) It is, of course, true that when a city originally sets up its pension system it has a rather wide latitude in prescribing the terms and conditions for retirement, and it may adopt restrictions that would be considered unreasonable impairments of the contract if subsequently imposed upon employees who have served under the pension plan. As we have seen, however, the felony conviction provision was not part of the original pension ordinance.

The 1927 and 1946 ordinances, by their terms, clearly purport to apply to a person in Wallace's position, and we must, therefore, determine whether the changes made come within

*For the rule with respect to the right of a city to change pension rights after retirement of an employee, see *Terry* v. *City of Berkeley,* 41 Cal.2d 698, 702-703 [263 P.2d 833].

the bounds of a reasonable modification or whether their effect is to impair his vested contractual rights. A number of decisions applying the principles announced in the Kern case have upheld, as reasonable, amendments which were enacted after the employees involved had earned some pension rights but before their pensions became payable. (*Packer* v. *Board of Retirement*, 35 Cal.2d 212, 218-219 [217 P.2d 660]; *Allstot* v. *City of Long Beach*, 104 Cal.App.2d 441, 443-444 [231 P.2d 498]; *Allen* v. *City of Long Beach*, 101 Cal.App.2d 15, 17-21 [224 P.2d 792]; *Palaske* v. *City of Long Beach*, 93 Cal. App.2d 120, 130 et seq. [208 P.2d 764]; *Brooks* v. *Pension Board*, 30 Cal.App.2d 118, 123 [85 P.2d 956] [decided prior to Kern case].) In the Packer case the modification eliminated a benefit for an employee's widow but made other changes which were advantageous to the employee. The Allstot, Allen and Palaske cases involved an amendment depriving an employee of the right to earn an increase in the amount of his pension payments by remaining in employment after reaching the retirement age. In the Brooks case the amount of the pension was reduced from two-thirds to one-half of the employee's salary. Another decision which upheld an amendment is *Brophy* v. *Employees Retirement System*, 71 Cal.App.2d 455, 457-459 [162 P.2d 939], where the modification permitted substantial reductions in pension payments if the pensioner obtained other gainful employment, but that decision is not helpful since it preceded the Kern case and was made without any discussion as to whether the change was reasonable.

No case in this state has passed upon the specific question of the reasonableness of an amendment, made before an employee is eligible to retire, which provides for termination of pension rights if he is convicted of a felony after retirement. In order to determine this question we must look to the general principles set forth in the Kern and Packer cases where it was pointed out that a city may make reasonable modifications of pensions, prior to retirement, for the purpose of keeping the pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy. (29 Cal.2d at pp. 854-855; 35 Cal.2d at p. 214.) ■ We must also keep in mind the facts that pension payments are deferred compensation to which a pensioner becomes entitled upon performing all services required under the contract and that his retirement because of age ordinarily shows that he has done everything necessary to entitle him to pay-

ment of the pension. (See *Terry* v. *City of Berkeley,* 41 Cal. 2d 698, 703 [263 P.2d 833]; *Kern* v. *City of Long Beach,* 29 Cal.2d 848, 851 et seq. [179 P.2d 799].)

■ Application of these principles in the present case leads to the conclusion that the amendment does not constitute a reasonable modification as to Wallace. The termination of all pension rights upon conviction of a felony after retirement does not appear to have any material relation to the theory of the pension system or to its successful operation. Rather, the change was designed to benefit the city and, as stated in the city's brief, to meet the objections of taxpayers. who would be opposed to contributing funds for the maintenance of a pensioner who had been convicted of a felony. At the time of the amendment, Wallace had obtained substantial rights by reason of his services, and the amendment in effect operated as a condition subsequent to terminate a pension which he had fully earned. ■ A city has no more right to adopt an amendment which does not come within the purposes of the rule permitting modifications than a private insurance carrier would have to change an annuity policy by making a unilateral amendment under which the insured's interest might be terminated upon his conviction of a felony.

■ The city seeks to justify the provision relating to felony conviction by pointing out that under the 1927 and 1946 ordinances a pensioner such as Wallace may be assigned to work in case of a "great public emergency." The argument appears to be that conviction of a felony would make a pensioner unfit or unavailable for service in the event of an emergency and that, accordingly, it was reasonable for the city to provide for termination of pension payments upon conviction after retirement. There is only a remote possibility, however, that a pensioner will be called upon for such service. A "great public emergency" would occur only infrequently; in addition, the city does not require that pensioners remain at all times available for service or that they refrain from leaving the city, and a pensioner might well be absent from the city at the time of such an emergency. The contingent loss which might result from inability to obtain service from a pensioner in case of his conviction of a felony cannot warrant the city in adopting an amendment imposing upon one who has already earned some pension rights the drastic penalty of loss of all such rights in case of a felony conviction after retirement. Our conclusion in this respect is strengthened by the fact that

the contingent benefit which the city might receive from emergency service performed by retired employees would not have any direct relation to the functioning of the pension system, and, as we have seen, the primary purpose of modifications should be to safeguard the pension system and carry out its beneficent purposes. Considered from the standpoint of the employees the emergency requirement, adopted at the same time as the felony provision, is merely another detriment, and it would seem obvious that the city should not be permitted to urge one detriment to offset another.

The judgment is reversed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—Under the 1923 ordinance, an employee who is convicted of a felony can be removed from the department and his pension rights terminated. The ordinance under which the present proceeding was instituted, enacted more than 20 years before Wallace retired, merely extended the time of an employee's required good behavior to include the period after his retirement. I find no basis for the conclusion that this change was an unreasonable one.

In my opinion, the test of permissible amendment of a pension system stated by the Chief Justice is entirely too narrow. Certainly the flexibility of a pension system to meet changing conditions and the safeguarding of its proper purposes are important considerations, but I would not rule out the many other reasons of public policy which may well enter into such a determination. I believe that fundamental principles of good government permit the public to establish minimum standards as to the character of the recipients of public funds. Those standards should include the right to insist upon honesty of public officers both in office and after retirement from governmental service.

I would affirm the judgment.