Filed 11/1/18; Certified for Publication 12/3/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JON WILMOT,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>CONTRA COSTA COUNTY EMPLOYEES' RETIREMENT ASSOCIATION et al.,<br><br>      Defendants and Respondents. | A152100<br><br>(Contra Costa County Super. Ct. No. MSN161730) |

A long-time county employee decided to retire, and in December 2012, he submitted his application for retirement to the county's retirement authority. On January 1, 2013, the California Public Employees' Pension Reform Act of 2013 (Pension Reform Act or PEPRA) took effect. Included in that measure is a provision that mandates the complete or partial forfeiture of pension benefits/payments if a public employee is convicted of "any felony under state or federal law for conduct arising out of or in the performance of his or her official duties." (Gov. Code,[1] § 7522.72, subd. (b)(1).) In February 2013, the employee was indicted for stealing from the county for more than a decade. In April 2013, the county pension authority approved the employee's retirement application, fixing the employee's actual retirement on the day he submitted that application in December 2012. Also in April 2013, the employee began receiving monthly pension checks starting from December 2012. In December 2015, the employee

---

[1] Statutory references are to this code unless otherwise indicated.

pled guilty to embezzling county funds for a 12-year period ending in December 2012. Thereafter, the county pension authority reduced the employee's monthly check in accordance with the forfeiture provision.

Among the questions presented are whether applying the forfeiture provision applies to the employee at all, and whether reduction of his pension benefits amounts to an unconstitutional impairment of his employment contract with the county, or also constitutes imposition of an ex post facto law. We conclude the provision does apply to the former employee. Because we decide this as a matter of statutory construction, there is no need to consider the possibility of a constitutional violation for someone in a different situation.

## BACKGROUND

The salient facts are without dispute.

Plaintiff Jon Wilmot commenced employment with the Contra Costa County Fire Protection District in 1985. By 2012, he had risen to the rank of captain. During this period, he was a member of the retirement program established by Contra Costa County in accordance with the County Employees Retirement Law of 1937 (CERL) (Stats. 1937, ch. 677, codified in 1947, § 31450 et seq.), which is administered by the Board of Retirement of the Contra Costa County Employees' Retirement Association. The association and its governing board will hereafter be designated as CCERA.

By the end of 2012, Wilmot had decided to retire. His final day on the job was December 12, and he submitted his "application for a service retirement" (§§ 31663.25–31663.26) to CCERA the following day.

On January 1, 2013, the Pension Reform Act became effective, thus adding section 7522.72. The relevant language is subdivisions (b)(1) and (c)(1), which originally provided in pertinent part:

"(b)(1) If a public employee is convicted by a state or federal trial court of any felony under state or federal law for conduct arising out of or in the performance of his or her official duties, in pursuit of the office or appointment, or in connection with obtaining salary, disability retirement, service retirement, or other benefits, he or she shall forfeit all

2

accrued rights and benefits in any public retirement system in which he or she is a member to the extent provided in subdivision (c) and shall not accrue further benefits in that public retirement system, effective on the date of the conviction.  [¶] . . . [¶]

"(c)(1)  A public employee shall forfeit all the retirement benefits earned or accrued from the earliest date of the commission of any felony described in subdivision (b) to the forfeiture date, inclusive. The retirement benefits shall remain forfeited notwithstanding any reduction in sentence or expungement of the conviction following the date of the public employee's conviction.  Retirement benefits attributable to service performed prior to the date of the first commission of the felony for which the public employee was convicted shall not be forfeited as a result of this section."  (Stats. 2012, ch. 296, § 15.[2])

On March 19, 2013, CCERA received Wilmot's "Choice of Retirement Allowance."  The following month CCERA sent him his first monthly pension check for $8,758.46.  In April 2013, CCERA formally approved Wilmot's retirement application, fixing his date of retirement as December 13, 2012.

But Nemesis was already on her way.

At some point not established by the record, authorities learned that Wilmot had, for a considerable part of his tenure, been stealing property and equipment from the Contra Costa County Fire Protection District.[3]  In February 2013, the District Attorney filed four felony charges.  In December 2015, Wilmot entered a plea of no contest to a single charge that was alleged in the information as follows:

---

[2] Two 2013 amendments made the language nongender-specific (Stats. 2013, ch. 528, § 76) and expanded the forfeiture in subdivision (c)(1) to "rights" as well as benefits (Stats. 2013, ch. 528, § 13).

[3] Wilmot was subsequently ordered to pay almost $33,000 to the district as criminal restitution.  Included in the materials submitted to CCERA in connection with reducing Wilmot's monthly pension check was a two-page inventory of the "CCCFPD Property Recovered from Wilmot Truck   Date:  12/12/12," together with an 11-page undated inventory of "Property Recovered from Houses."  The alert reader will note that at least one of these "recoveries" occurred the day before Wilmot submitted his retirement application.

"The District Attorney of the County of Contra Costa hereby further accuses JON WILMOT, Defendant, of the crime of felony, a violation of PENAL CODE SECTION 503/508 (EMBEZZLEMENT BY CLERK, AGENT, OR SERVANT), committed as follows:  [¶]  On or about January 1, 2000 through December 31, 2012, at Alamo, Orinda and Concord, in Contra Costa County, the Defendant, JON WILMOT, did willfully, unlawfully and fraudulently appropriate property from Contra Costa Fire Protection District."

Upon learning of Wilmot's conviction, CCERA advised him:  "In accordance with the . . . Pension Reform Act . . . , [CCERA] is required to make adjustments to your member account."  Wilmot was informed that, by reason of his conviction, "Section 7522.72 therefore requires that you forfeit all [CCERA] rights and benefits accrued from January 1, 2000, the date of the first commission of the felony."  The specified consequences were:  (1) "Service credit from January 1, 2000 through December 13, 2012, totaling 13 years and 0 months, has been expunged"; (2) $249,937.64 of plaintiff's total "employee contributions" of $288,857.74 would be refunded; and (3) these changes to his "Final Average Compensation Adjustment" would reduce plaintiff's monthly check from $8,758.61 to $2,858.56.

These changes were adopted in August 2016, following a contested public hearing.  Wilmot was advised by letter that "the [CCERA] Board of Retirement" "determined pursuant to . . . Section 7522.72 to adjust your retirement allowance effective September 1, 2016."[4]

The next month Wilmot commenced this action with a petition for a writ of traditional mandate and declaratory relief.  The basis of Wilmot's position—in the trial and on appeal—was succinctly stated in his petition:  "Respondents' application of the felony forfeiture provision appearing in . . . section 7522.72 to Petitioner is improper

---

[4] It appears that Wilmot was also receiving benefits from CalPERS for a period of service with a different public employer.  After CCERA informed CalPERS of its action, CalPERS followed and "amended" Wilmot's "retirement benefit" downward.  The decision by CalPERS has never been at issue in this litigation.

4

because the statute does not apply retroactively to persons such as Petitioner who retired prior to its effective date.  Moreover, even if . . . section 7522.72 was intended to apply retroactively to persons who retired prior to its effective date, the statute cannot lawfully do so because Petitioner's pension benefit became due and payable upon his retirement and the Legislature cannot lawfully alter an existing retiree's pension benefit once the benefit came due and payable.  The Legislature also lacks authority to enhance the punishment for past conduct by enacting an ex post facto law.  By applying . . . section 7522.72's forfeiture provision to Petitioner, Respondents ignored the terms of the statute itself, unlawfully impaired Petitioner's constitutionally protected pension benefits, and violated Petitioner's constitutional right to be free from an ex post facto application of the law."  The Attorney General was allowed to intervene to defend the constitutionality of section 7522.72.

Following extensive briefing and argument, the trial court (Hon. Charles Treat) denied the petition with a thoughtful order that merits quotation at length:

"Wilmot asserts a number of interconnected arguments why the Board's determination is incorrect, and he cannot be subjected to PEPRA's forfeiture provisions.  First, he argues that he is not a 'public employee,' or 'member' subject to § 7522.72.  It is undisputed that § 7522.72 did not come into effect until January 1, 2013.  As of that date (Wilmot argues), he was no longer a 'public employee,' because he had retired effective the preceding December 13.  That, he reasons, made him a retiree, not a 'public employee' (and hence also not a 'member').  Accordingly, by its own textual definition of its coverage, § 7522.72 does not apply to him, and does not authorize or work any forfeiture of his pension rights.

"Wilmot's following arguments are variations on the same theme.  His second argument is that if § 7522.72 could be read as applying to a person who had retired before 2013, it would be at best ambiguous in that respect.  Thus, he invokes the principle of refusing to read a statute to apply retroactively—meaning, as Wilmot uses the term, as applicable to a person already retired as of the effective date of the statute.  Third, he argues that if the statute did dictate a forfeiture as to pension rights that had accrued prior

5

to the statute's enactment, it would represent an unconstitutional interference with vested pension rights already in existence on the statute's first effective date.

"Wilmot's arguments potentially raise a number of textual and logical difficulties. The Court need not decide all these difficulties, however, because all of Wilmot's arguments (except his *ex post facto* argument, discussed below) all fail at their critical initial premise. All of the above arguments assume that as of January 1, 2013, Wilmot was already formally retired. It is from this premise that he argues (1) that as of that date he was not a 'public employee' or 'member', (2) that application of the statute to him would be retroactive, and (3) that his pension rights were constitutionally vested. If, to the contrary, Wilmot was not yet retired but still employed as of January 1, 2013, the preceding arguments all fall apart. It was for this reason that the Court called for supplemental briefing as to whether [Wilmot] was 'retired' on December 13, 2012, the date he selected as his retirement date, or on April 10, 2013, the date the [CCERA] Board acted on [Wilmot's] application.

"In his supplemental brief, Wilmot argues: [¶] 'Under [CERL], a member who has provided the qualifying number of years of service and has attained the required age is 'retired upon filing with the board a written application setting forth the date upon which the member desires his or her retirement to become effective . . . .' (. . . §§ 31672(a), 31663.25(a), 31663.26(a). . . .) Thus, a qualifying member is 'retired' as of the effective date identified on the submitted application. *[CERL] grants the member*—not the retirement board or the employer—*the right to select their own date of "retirement" . . . .'* [¶] . . . [¶]

"But these Government Code provisions do not say that the member is *retired* upon his application. They say that he *may be retired*. (See . . . § 31672(a) ['A member . . . *may be retired* upon filing with the board a written application . . . .']; § 31663.25(a) ['Except as provided in Section 31663.26, a safety member[5] . . . *may be*

---

[5] A "safety member" is defined in CERL as "[a]ny person employed by a county . . . whose principal duties consist of active law enforcement or active fire

6

*retired* upon filing with the board a written application . . . .']; § 31663.26 ['Notwithstanding Section 31663.25, a safety member . . . *may be retired* upon filing with the board a written application . . . .'] [emphasis added].)  Wilmot selectively quotes around the actual verb.

"The entity that retires the member is the Board.  (See . . . § 31670 ('Retirement of a member who has met the requirements for age and service *shall be made by the board* pursuant to this article . . . .') (emphasis added).  Wilmot argues that this is a mere ministerial act.  But no matter how ministerial that act may be, in that the Board merely confirms [Wilmot's] age and service, under the plain statutory language retirement cannot occur until the Board so acts.  Moreover, while the formal act of retirement is no doubt more or less ministerial in most cases, it may not always be so.  For example, suppose that Wilmot's embezzlement conviction had occurred in March 2013 rather than December 2015.  In that case, at the time the Board acted on Wilmot's retirement, it would have been obligated to assess whether Wilmot's conviction subjected him to the forfeiture provisions of § 7522.72, and to carry out those provisions if applicable.  That is not the actual timing of this case—but it points out why the official date of the Board's action matters, and why a member cannot be deemed formally retired until the Board does act.  Here, that did not occur until after January 1, 2013.

"The only case law that any party has cited as closely on point is *MacIntyre v. Retirement Board of S.F*. (1941) 42 Cal.App.2d 734 [(*MacIntyre*)].  There, two police officers filed applications for retirement.  After the first application (but before the second), a verified complaint was filed, charging both officers with various forms of misconduct.  The charges resulted in the officers' dismissals, and the denial of any pension rights to them.  The court rejected their argument that their pension rights had vested when they met the requisites for retirement—age, years of service, and contribution—so that their pension rights could not be denied due to any subsequent

suppression . . . or active lifeguard service . . . or juvenile hall group counseling and group supervision . . . ."  (§ 31469.3, subd. (b).)

7

determinations. And more specifically, the court rejected the argument that either officer was already retired by the time of his dismissal, because of the filing of their applications for retirement. 'The filing of an application does not *ipso facto* retire the applicant. It is necessary that an order of retirement be duly made.' (*Id*. at 736.) *MacIntyre* is not directly controlling here, as the city and officers there were operating under different applicable statutes (and the decision does not delve into the statutory language). The case illustrates, however, that where the relevant statutory language dictates that 'retirement' occurs upon board action and not simply upon the filing of an application, that formality must be taken seriously.

"Accordingly, even assuming *arguendo* that § 7522.72 applies only to persons who were not yet retired as of January 1, 2013, the undisputed facts here show that Wilmot himself was not yet formally retired as of that date. The act that (by Wilmot's logic) transformed him from a 'public employee' and 'member' into a retiree/former employee was not his selection of December 13, 2012 as the effective date of his retirement, but the Board's approval of that retirement on April 10, 2013.

"That leaves Wilmot's *ex post facto* argument, which is not dependent on the timing of his retirement. Rather, the contention looks only to the dates of the commission of Wilmot's crime (2000 to 2012) and the date of the effectiveness of PEPRA ([January 1,] 2013). The argument is that a crime, committed no later than 2012, is being penalized by a forfeiture statute enacted only after the crime had been committed and completed.

"On its face, § 7522.72 is a civil statute, not subject to the prohibition on *ex post facto* laws. See Cal. Const. art. 1, § 9; *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 180 ('The ex post facto clauses [of the U.S and California Constitutions] apply only to penal statutes.'). The State concedes that civil penalties can in some cases violate the ex post facto clause if the punishment amounts to a criminal proceeding. (See *People v. 25651 Minoa Dr*. (1992) 2 Cal.App.4th 787, 796–797.) But the test for such a finding is two-fold and not in Wilmot's favor: 1) Did the state intend to establish a criminal or civil penalty?; And 2) If the intent was a civil penalty, was the statutory scheme so

punitive in purpose or effect as to negate that intention?  (See [*United States*] *v. One Assortment of 89 Firearms* (1984) 465 U.S. 354, 362.)

"The Court is satisfied that there is no *ex post facto* violation here.  Wilmot concedes that the Legislature intended to enact a civil penalty, not a criminal one.  The statutory scheme is not so punitive as to negate that intention.  PEPRA's forfeiture provisions do not function to impose a punitive fine on Wilmot, let alone to subject him to imprisonment or the like.  Rather, what PEPRA accomplishes is to take back from Wilmot what he never rightly earned in the first place—namely pension rights for a period when he was violating his trust as an employee by embezzling from his employer.  (See also *MacIntyre*[, *supra*], 42 Cal.App.2d at [pp.] 735–[7]36.)

"This ruling makes it unnecessary to rule on objections to the parties' respective requests for judicial notice.  The proffered documents are adduced only as bearing on the proper construction of § 7522.72, in particular as to whether it does or does not apply to a person who was already retired as of the end of 2012.  That is the question that the Court has declined to decide, because it turns out that Wilmot himself was not retired as of the end of 2012.  For the sake of completeness, however, the Court will sustain the Board's and State's objections.  There is no sufficient foundation that the documents objected to represented a considered, official, and final position from the agencies they came from—let alone any indication that they have anything to do with the intention of the Legislature when it enacted § 7522.72.  Moreover, the CALPERS documents do not purport to say anything one way or the other as to the question at issue here—the applicability of PEPRA's felony forfeiture provisions to pre-enactment retirees."

## DISCUSSION

### Legal Principles

This Appellate District is no stranger to the Pension Reform Act.  Three of its five divisions have given their opinion on whether its application to current employees constitutes an unconstitutional impairment of their contracts of employment.  Our Supreme Court will have the last word on this subject.  (*Marin Assn. of Public Employees v. Marin County Employees' Retirement Assn.* (2016) 2 Cal.App.5th 674 (*Marin*), review

9

granted Nov. 22, 2016, S237460; *Cal. Fire Local 2881 v. California Public Employees' Retirement System* (2016) 7 Cal.App.5th 115, review granted Apr. 12, 2017, S239958; *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2018) 19 Cal.App.5th 61, review granted Mar. 28, 2018, S247095.)

Here, we return to the Pension Reform Act, particularly as it applies to public employees covered by a pension system administered under CERL. We have already examined the genesis of the Pension Reform Act, and the general operation of CERL programs in *Marin*, *supra*, 2 Cal.App.5th 674, 680–683. Unlike the rather generalized and abstract setting we found there, we must now get involved with the actual particulars of the pension application process.

In *Marin*, we addressed one specific change in the Pension Reform Act, namely, the Legislature's goal of curbing the perceived abuse of "pension spiking." It is another perceived abuse at issue here—the first statewide adoption of what is known as a "pension forfeiture" provision (see generally Jacobs, Friel, O'Callaghan, *Pension Forfeiture: A Problematic Sanction for Public Corruption* (1997) 35 Am.Crim.L.Rev. 57) to public employees. Such measures were an early feature of municipal pension schemes, and the general principle that pension rights could be lost by criminal behavior had been judicially ratified by California courts.[6] However, there was a qualification: crimes committed after retirement were excluded. (E.g., *Wallace v. City of Fresno* (1954) 42 Cal.2d 180; *Lawrence v. City of Los Angeles* (1942) 53 Cal.App.2d 6; *MacIntyre v. Retirement Board of S.F.* (1941) 42 Cal.App.2d 734.)

---

[6] The United States has had such a provision since 1954. (See *Hiss v. Hampton* (D.D.C.) 338 F.Supp. 1141, 1142, fn. 1.) In the private sector, "employee pensions that have vested (i.e., the employee has satisfied the statutory age and/or years-of-service requirements) are protected from forfeiture for misconduct under the anti-alienation and anti-forfeiture provisions of ERISA . . . as interpreted by the United States Supreme Court in *Guidry v. Sheet Metal Workers Nat'l Pension Fund* [(1990) 493 U.S. 365]." (Jacobs, Friel, O'Callaghan, *Pension Forfeiture: A Problematic Sanction for Public Corruption*, *supra*, 35 Am.Crim.L.Rev. 57, 58–59.)

10

In 2005, in the wake of several notorious incidents of financial corruption and mismanagement, the Legislature passed a measure allowing for the limited forfeiture of pension benefits for "any elected public officer who takes public office, or is reelected to public office, on or after January 1, 2006" upon conviction of a specified crime. (Stats. 2005, ch. 322 [adding former § 1243]; see Little Hoover Com., Public Pensions for Retirement Security (Feb. 2011) p. 39.)[7] Section 7522.72 applies to "a public employee first employed by a public employer . . . before January 1, 2013." Section 7522.74 applies to those persons whose employment commenced "on or after January 1, 2013."

As pension forfeiture provisions go, California's is rather temperate. It is not triggered by just any conviction, or even any felony conviction, but only a felony conviction that is job-related. Pension benefits are not lost entirely, but only for the period of the felonious behavior. The employee's contributions for that period are not kept, but are returned. (§ 7522.72, subd. (d)(1).) If the conviction is reversed, the employee may redeposit her contributions and "[r]ecover the forfeited rights and benefits." (*Id.*, subd. (h).)

**Application**

Wilmot asserts in effect there is but a single legal error, namely, after December 13, 2012, he was retired, no longer an active, working public employee, and therefore beyond the reach of section 7522.72.

This case is a perfect example of how a word can have an everyday meaning. and a very different legal definition. Most people would ordinarily think if a person who has

---

[7] The Legislature had already provided that "Any person who is receiving an allowance from a public retirement system, who is charged by indictment or complaint, either in a court of this state or a federal court whose jurisdiction encompasses all or any portion of the state, with the commission of any felony involving or accepting or giving, or offering to give, any bribe, the embezzlement of public money, extortion or theft of public money, perjury, or conspiracy to commit any of those crimes arising directly out of his or her official duties as a public officer, who has a legal obligation not to leave the jurisdiction of the court, but does leave, shall have his or her retirement allowance suspended while absent the jurisdiction of the court." (§ 1235, subd. (a), added by Stats, 1994, ch. 991, § 2.)

worked at the same job for 30 years or so, submits the appropriate paperwork for retirement and completes the last day of work, then that person can legitimately think of himself as retired. However, for public employees in California, particularly employees covered by CERL, retirement is hardly that simple.

Judge Treat's ruling was quoted almost in full because it addresses the points raised here—and because it is correct. Finishing the last day of work does not automatically make a public employee a "retired" former employee. Submitting your application for pension benefits does not make you retired for purposes of CERL. We only briefly augment Judge Treat's reasoning.

Wilmot attacks that reasoning as "fundamentally flawed" because Judge Treat "failed to appreciate the distinction between an individual's employment status and their retirement status." In his words, these are "separate and distinct conditions" "acknowledged by Section 7522.72 itself." However, resort to the language of a single provision may be deceptive and misleading. It also goes against the sensible principle cautioning courts that they should not " ' "construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness.' " ' " (*People v. Valencia* (2017) 3 Cal.5th 347, 384.) Given that we are dealing with an extensive statutory scheme of almost fiendish complexity, it is appropriate to take this canon of statutory construction to heart, particularly because section 7522.72 is not even in CERL (which commences with section 31450 and concludes with section 31898, and which occupies the better part of two volumes of West's Annotated California Codes).

At first glance, Wilmot's distinction between "employment status" and "retirement status" has a natural attraction because it accords with the common understanding of what retirement means. It might also appear that CCERA unwittingly bolstered Wilmot's position by dating his retirement to December 13, 2012 and, eventually, paying him pension benefits from that date. Thus, Wilmot can in effect say: "See, even CCERA accepts that I retired on December 13th." Wilmot's reasoning is sound, but conditionally so, being subject to the proviso identified by Judge Treat.

12

The person who has stopped working naturally would no longer think of herself as being a public employee, but as a former public employee, a *retired* public employee. But this is a false dichotomy. The issue is not how such a person characterizes herself, but how CERL does.

Submitting retirement papers is only the start of the retirement process under CERL. The application is then reviewed, and, if correct in form, sent to the county retirement board for its approval. The need for this hiatus is obvious. It allows for a change of mind by the employee. The retirement board has to verify the employee's history. (*Flethez v. San Bernardino County Employees Retirement Assn.* (2017) 2 Cal.5th 630, 636 ["a county retirement board . . . must 'investigate[] applications and pay[] benefits only to those members who are eligible for them' "]; cf. § 31541, subd. (a) [retirement board may "correct the errors or omissions of any active or retired member"].) The employee's "final compensation" (see § 31462.05, subd. (d)) must be computed. Whether the employee has a "prior service pension" (see §§ 31664, 31664.1, 31664.2, 31676, 31677) with another employer, or was employed as a safety member by a different agency (§§ 31664.5, 31672.5), may also have to be considered. Depending on the agency involved, there may be a policy requiring that the employee's vacation or leave time be exhausted (if only for accounting purposes) before a replacement may be hired.[8] (Cf. § 21163 ["the retirement of a [CalPERS] member who . . . is entitled to sick leave . . . shall not become effective until the expiration of the sick leave"].) The retirement board would also be " 'required to determine whether items of remuneration paid to employees qualify as "compensation" under section 31460 and "compensation earnable" pursuant to section 31461, and therefore must be included as part of a retiring employee's "final compensation" (§ 31462 or § 31462.1) for purposes of calculating the amount of a pension.' " (*Marin*, *supra*, 2 Cal.App.5th 674, 680, quoting *In re Retirement Cases* (2003) 110 Cal.App.4th 426, 433.) There may be other factors reflected in the

---

[8] This may be especially true if the employee is seeking disability retirement. (See *Katosh v. Sonoma County Employees' Retirement Assn.* (2008) 163 Cal.App.4th 56 [employee's disability retirement effective when accrued sick leave exhausted].)

memorandum of understanding negotiated between public agencies and employees under the Meyers-Milias-Brown Act (§ 3500 et seq.), which often address points relevant to compensation and pensions and might therefore have to be consulted. All this takes time.

Judge Treat cited a number of statutes establishing that the employee's application is merely pending until approved by a retirement board. Other statutes are more emphatic, leaving no doubt that the decisive retirement event is that approval. (See § 31497.3, subd. (a) ["Retirement of a member . . . who has met the requirements for age and service shall be made by the board, *at which time the member . . . becomes a retired member*," italics added], § 31499.4, subd. (a) [same], § 31511.4, subd. (a) [same], § 31486.4, subd. (a) ["Retirement of a member or former member who has met the requirements for age and service shall be made by the board, *at which time the member or former member becomes a retired member*," italics added], § 31491, subd. (a) [same], § 31499.14, subd. (a) [same].) Wilmot is simply wrong in stating "*No CERL provision states that retirement occurs 'upon board action.'*"

True, there are statutes with language that a vested employee "may be retired upon filing with the board a written application" (e.g., §§ 31491, subds. (c), (d); 31497.3, subds. (c), (d); 31499.4, subds. (c), (d)), but the same statutes also specify that the decisive act is approval of that application by the board: "Retirement of a member . . . shall be made by the board, *at which time the member or former member becomes a retired member*." (§ 31491, subd. (a), italics added, § 31497.3, subd. (a), 31499.4, subd. (a).) Wilmot attacks as "incorrect[]" and a "misconstru[ction]" Judge Treat's conclusion that it was CCERA's approval of his retirement application that "transformed him from a 'public employee' and 'member' into a retiree/former employee." The verb may not fit perfectly, but it does capture the essence of the process.

Wilmot notes that "[t]he distinction between an individual's employment status and retirement status makes sense." It is but a truism to say that employment and retirement are different things. It does not follow that CCERA was, in plaintiff's characterization, "dictat[ing]" his status. CCERA was merely following established procedures, admittedly one with a new wrinkle. If there was any dictating, it was done

14

by CERL, and the Legislature. Indeed, by insisting that he "was in fact retired" when he submitted his retirement application, it is Wilmot who is doing the dictating by deciding which parts of CERL apply to him.

Wilmot asserts that *MacIntyre* involved a municipal charter pension system, and thus does not give guidance to how CERL should be construed. We do not agree. As already shown, the municipal pension system in *MacIntyre* operates in much the same manner as does CERL. The excerpt from *MacIntyre* quoted by Judge Treat—"The filing of the [pension] application does not *ipso facto* retire the applicant. It is necessary that an order of retirement be duly made" (*MacIntyre*, *supra*, 42 Cal.App.2d 734, 736)—is a spot-on description of how CERL operates. If anything, section 7522.72 is more measured than the San Francisco provision, for where the police officers committed only "conduct unbecoming an officer, disobedience of orders and insubordination" (*MacIntyre*, at p. 735), Wilmot was convicted by his own admission of long-term felonious thievery from his employer. Also, unlike the dismissed officers in *MacIntyre*, Wilmot was not stripped of all pension benefits.

Wilmot is simply mistaken when stating "the Supreme Court has made it clear that, in accordance with a retirement system's relevant governing provisions, an employee is entitled to a pension *at the moment the employee has submitted an application for it* after attaining the minimum age and completing the prescribed period of service." (Italics added.) He points to no decision with such a holding.[9] Neither the

---

[9] The only real expression on the subject by our Supreme Court is *Wallace v. City of Fresno*, *supra*, 42 Cal.2d 180. Wallace, who retired as chief of police, had his pension payments stopped when he was convicted of a federal crime. The forfeiture provision was added after Wallace entered the police department, but long before he retired. In a relatively brief opinion, the Supreme Court concluded the termination of Wallace's pension was invalid.

"No case in this state has passed upon the specific question of the reasonableness of an amendment, made before an employee is eligible to retire, which provides for termination of pension rights if he is convicted of a felony after retirement. In order to determine this question we must look to the general principles set forth in the *Kern* [*v. City of Long Beach* (1947) 29 Cal.2d 848] and *Packer* [*v. Board of Retirement* (1950)

language of section 7522.72 in particular, nor CERL in general, lends the slightest

support to the idea that a corrupt public employee, knowing that law enforcement is

closing in, has only to throw his retirement application in a mailbox to make accrued

pension benefits untouchable. (Cf. *Kerner v. State Emp. Retirement System* (Ill. 1978)

382 N.E.2d 243, 246 ["under plaintiff's theory, an employee need only retire prior to his

_____

35 Cal.2d 212] cases where it was pointed out that a city may make reasonable modifications of pensions, prior to retirement, for the purpose of keeping the pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy. [Citations.] We must also keep in mind the facts that pension payments are deferred compensation to which a pensioner becomes entitled upon performing all services required under the contract and that his retirement because of age ordinarily shows that he has done everything necessary to entitle him to payment of the pension. [Citations.]

"Application of these principles in the present case leads to the conclusion that the amendment does not constitute a reasonable modification as to Wallace. The termination of all pension rights upon conviction of a felony after retirement does not appear to have any material relation to the theory of the pension system or to its successful operation. Rather, the change was designed to benefit the city and, as stated in the city's brief, to meet the objections of taxpayers who would be opposed to contributing funds for the maintenance of a pensioner who had been convicted of a felony. At the time of the amendment, Wallace had obtained substantial rights by reason of his services, and the amendment in effect operated as a condition subsequent to terminate a pension which he had fully earned. A city has no more right to adopt an amendment which does not come within the purposes of the rule permitting modifications than a private insurance carrier would have to change an annuity policy by making a unilateral amendment under which the insured's interest might be terminated upon his conviction of a felony." (*Wallace v. City of Fresno*, *supra*, 42 Cal.2d 180, 184–185; see *id*. at p. 183 ["a public pension system is subject to the implied qualification that the governing body may make reasonable modifications and changes *before the pension becomes payable*," italics added].)

The court was not clear as to whether the decisive factor was (a) that a complete forfeiture of pension rights was not a "reasonable modification" or (b) the forfeiture language could not reach a person who was actually and formally retired. Likely it was both. (See *Skaggs v. City of Los Angeles* (1954) 43 Cal.2d 497, 503 [*Wallace* "held that the amendment constituted an unreasonable impairment of plaintiff's contract with the city and could not operate to deprive him of his pension rights upon his conviction of a felony some three years after he retired."].) Parenthetically, Wilmot's reliance on *Skaggs* is misplaced for the simple reason that the employee was ultimately acquitted of the service-related criminal charge. (*Id.* at p. 499.)

conviction . . . to render the entire [forfeiture] statute meaningless"]; accord, *Woods v. City of Lawton* (Okla. 1992) 845 P.2d 880, 883; *Public Emp. Retirement System v. Dodd* (W.Va. 1990) 396 S.E.2d 725, 731; *Garay v. Dept. of Management Services* (Fla.Dist.Ct.App. 2010) 46 So.3d 1227, 1228.)

To sum up:  a public employee who has submitted application for retirement, and who is no longer actually working, is in a state of limbo until the application is approved by the retirement board.  It is only with that approval that the employee[10] can be considered "a retired member" for purposes of CERL.  On January 1, 2013, when the Pension Reform Act and section 7522.72 took effect, Wilmot's application had been submitted but not yet approved by CCERA.  Because Wilmot did not become officially retired until April 2013, he was subject to the new forfeiture provision.  Because he was still an employee, there can be no question of retroactive application.

Wilmot's position that he is being "divested" of his vested pension benefits is built on two assumptions.  The first is that he was "retired" when he sent in his pension application and no longer went to work.  The preceding discussion has established that this initial conclusion is faulty.  The second assumption is that pension benefits, whenever acquired during the course of employment, thereupon become "vested," by which Wilmot means fixed and not subject to alteration.  However, our Supreme Court has repeatedly held that anticipated pension benefits are subject to " 'reasonable modifications and changes *before the pension becomes payable* and that until that time the employee does not have a right to any fixed or definite benefits . . . .' "  (*Miller v. State of California* (1977) 18 Cal.3d 808, 816 [emphasis added], quoting *Wallace v. City of Fresno*, *supra*, 42 Cal.2d 180, 183; accord, e.g., *Betts v. Board of Administration* (1978) 21 Cal.3d 859, 863; *Packer v. Board of Retirement, supra,* 35 Cal.2d 212, 218;

_____

[10] A fetish should not be made of the precise terminology of status.  As we pointed out, a person who stops going to the office may well consider herself a former employee.  Whether one is an "active" employee, a "legacy" employee, a former employee, or an about-to-be-retired employee is essentially immaterial.  The only relevant status, the one which is used by CERL, is whether one is or is not a "retired member," and CERL is explicit on how that status is acquired.

17

*Kern v. City of Long Beach*, *supra*, 29 Cal.2d 848, 854–855; cf. *Terry v. City of Berkeley* (1953) 41 Cal.2d 698, 702 [citing *Packer* as "authority for the proposition that reasonable changes detrimental to [a public employee] may be made" up to the time "the pension [is] due and payable."].)

Although the Attorney General clearly wants to have the constitutionality of the Pension Reform Act vindicated, he and CCERA acknowledge the case can be resolved as a matter of straightforward statutory construction.  With due regard for Wilmot's apparently unique set of circumstances, we see no need to go further and explore the possibility of a constitutional violation.[11]

## DISPOSITION

The judgment is affirmed.

---

[11] At the end of his brief, Wilmot argues that Judge Treat "improperly excluded relevant evidence showing that section 7522.72 was intended to apply solely to current public employees' on PEPRA's operative date."  "We apply the abuse of discretion standard in reviewing a trial court's ruling denying a request for judicial notice (i.e., we affirm the ruling unless the information . . . was so persuasive that no reasonable judge would have denied the request for judicial notice)."  (*CREED-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 520.)  Wilmot makes no genuine effort to disprove Judge Treat's ruling that the proffered "documents do not purport to say anything one way or the other as to the question at issue here—the applicability of PEPRA's felony forfeiture provisions to pre-enactment retirees."  The documents are therefore not so persuasive on that issue that any reasonable judge would have granted Wilmot's request.

_____
Richman, Acting P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.

A152100; *Wilmot v. CC County Employees' Retirement Assn.*

19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JON WILMOT,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CONTRA COSTA COUNTY<br>EMPLOYEES' RETIREMENT<br>ASSOCIATION et al.,<br><br>     Defendants and Respondents. | A152100<br><br>(Contra Costa County Super.<br> Ct. No. MSN161730)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

**THE COURT:**

The opinion in the above-entitled matter filed on November 1, 2018, was not certified for publication in the Official Reports. For good cause, the request for publication by Intervener, State of California is granted.

Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports

Dated: _____ _____

Acting P.J.

1

Trial Judge:                                Hon. Charles S. Treat

Trial Court:                                Contra Costa County Superior Court


Attorneys for Appellant:                   Rains Lucia Stern St. Phalle & Sliver
                                                 Timothy K. Talbot
                                                   Zachery A. Lopez

Attorneys for Respondents:                 Reed Smith LLP
                                                   Harvey L. Liederman
                                                   Maytak Chin

                                                   Attorney General of California
                                                   Xavier Becerra

                                                   Thomas S. Patterson
                                                   Senior Assistant Attorney General

                                                   Constance L. LeLouis
                                                   Supervising Deputy Attorney General

                                                   Anthony P. O'Brien
                                                   Deputy Attorney General